1

2                                                    **E-Filed 3/11/09**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9               FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   VANDA MCCAULEY,                    | Case Number C 07-1784 JF (RS)

13                    Plaintiff,        | ORDER[1] GRANTING DEFENDANTS'
                                        | MOTION FOR SUMMARY
14            v.                        | JUDGMENT; AND DENYING
                                        | PLAINTIFF'S REQUEST FOR
15   STANFORD UNIVERSITY MEDICAL CENTER, | CONTINUANCE PURSUANT TO
     et al.,                           | FED. R. CIV. P. 56(f)
16
                     Defendants.
17

18

19          Defendants move for summary judgment.  Plaintiff opposes the motion and seeks a

20   continuance pursuant to Fed. R. Civ. 56(f) for the purpose of conducting additional discovery.

21   The Court has considered the moving and responding papers and the oral arguments of counsel.

22   For the reasons discussed below, Defendants' motion will be granted, and Plaintiff's request for a

23   continuance will be denied.

24                                  I. BACKGROUND

25          Plaintiff Vanda McCauley ("McCauley") held the position of senior compensation analyst

26   in the human resources department of Defendants Stanford Hospital Clinics (SHC") and Lucile

27

28   _____
                [1]        This disposition is not designated for publication and may not be cited.

1   Packard Children's Hospital ("LPCH") (collectively, "Defendants") from September 2001 until

2   she resigned her employment in June 2006.  The responsibilities of a senior compensation analyst

3   include auditing new and existing jobs and reviewing the proper classification and salary/wage

4   range for different classes of hospital employees.  McCauley worked with three other

5   compensation analysts during her employment:  Chia-Yu Chan ("Chan"), Shara Johnson

6   ("Johnson"), and Alex Tylor-Boarman ("Tylor-Boarman").

7         A primary responsibility of the compensation team was performing "focal salary review"

8   for discrete groups of employees – e.g., nurses, hourly employees, salaried employees, executives

9   – on an annual basis.  McCauley Depo. 47:2 - 48:15.  In this type of review the analyst looks at

10   the group of employees as a whole, compares the compensation of that group to market data, and

11   verifies that the compensation is in line with Stanford's compensation philosophy.  *Id*. 47:24 -

12   48:3.  The reviews for the different groups are staggered so that the compensation team performs

13   several focal salary reviews each year.  *Id*. at 48:6-23.  The reviews require use of Excel to create

14   and utilize worksheets, into which are input pay data, old employee titles, new employee titles,

15   old salary ranges, new recommended salary ranges, and the like.  *Id*. 49:7-20.  An analyst

16   working on a review must build the worksheets and create formulas in Excel.  *Id*. 50:11 - 51:1.  If

17   the calculations performed during this process are wrong, employees could be paid incorrectly.

18   *Id*. 54:1-5.  The salary review process is a high visibility, high-level project, and strong Excel

19   skills are vital to its success.[2]  Van Zee Decl., ¶ 2; Chan Decl. ¶ 3; S. Johnson Decl. ¶ 4; Tylor-

20   Boarman Decl. ¶ 3.

21

22

---

23        [2] In her opposition papers, McCauley challenges Defendants' "attempt to emphasize
'Excel' as the most important job function," arguing that the job description submitted with
24   Defendants' moving papers at Exhibit C to the Curry Declaration was not in fact McCauley's job
description at the time in question.  The Court need not resolve the question of whether the
25   proffered job description was in place at the time of McCauley's employment, because as
discussed above, the record – including McCauley's own deposition testimony – clearly
26   establishes that proficiency in Excel was an important skill necessary to performance of the
senior compensation analyst job.  McCauley herself testified that Excel was the "primary tool"
27   used to create worksheets during the majority of her employment, until the very last year before
she left.  McCauley Depo 54:16-25.
28

Case No. C 07-1784 JF (RS)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

**First Performance Evaluation**

On McCauley's first performance evaluation, conducted by her then-supervisor, compensation department manager Nancy Winningham ("Winningham"), McCauley received a rating of "Meets all standards and exceeds some." Curry Decl. Exh. D. Winningham noted, however, that McCauley needed to concentrate on "Relationships with Others"; Winningham felt that McCauley needed "to be more proactive in owning the issues and finding a solution, rather than treating the problem as if it belong[ed] to someone else." *Id*. McCauley received a 3.5% merit increase. Cabrera Decl. Exh. D. In her declaration executed for purposes of this lawsuit, Winningham stated that McCauley's Excel skills were "not where they needed to be." Winningham Decl. ¶ 3. Winningham explains her failure to mention Excel in McCauley's first evaluation by stating that because it was the first evaluation she wanted to give McCauley the benefit of the doubt. *Id*. ¶ 4.

**Second Performance Evaluation**

Winningham subsequently left the compensation department, and Rick Van Zee ("Van Zee") became the compensation department manager. He performed McCauley's second evaluation, dated April 19, 2004. Van Zee rated McCauley's performance as "Needs improvement," Curry Decl. Exh. E, stating that:

> Regarding statistical analysis and spreadsheet development for salary review programs, her skills are seriously lacking. . . . Vanda has not demonstrated the capability of <u>creating</u> spreadsheets with correct formulas, in an acceptable format and timeframe. These are basic and essential skills for any Compensation Analyst, especially at the senior level. Without substantial improvement in these areas, Vanda will not be successful in her job. Of comparable importance, Vanda needs to be able to ask for help, and to let her supervisor know when she may not be able to produce a task in the time required, especially when it has organization-wide impact, such as the Exempt Salary Review Program.

*Id*. McCauley received a 2% merit increase.

Van Zee had worked with McCauley on a salary review in 2003, during which McCauley failed to prepare her worksheets correctly. Van Zee Decl. ¶ 3. McCauley's formulas were incorrect, and her formatting was different and inconsistent. *Id*. Van Zee and the rest of the compensation team had to redo all the work performed by McCauley, which required them to work all night until the early morning hours. *Id*. Van Zee had to delay the distribution of the

1    worksheets by a day, which he found embarrassing.  *Id.*

2         SHC and LPCH paid for McCauley to attend intermediate and advanced Excel courses

3    held at the hospital in 2003 and 2004.

4         **Third Performance Evaluation**

5         On McCauley's next performance evaluation, dated October 28, 2004, Van Zee rated her

6    as "Fails to meet standards."  Curry Decl. Exh. F.  He stated that her "quality of work, especially

7    in the area of working with spreadsheets and statistical data is unacceptable."  *Id*.  He noted that,

8    because he could not rely on McCauley to do any of the more complex analyst duties, added

9    burdens were placed on the remainder of the compensation team to make up for McCauley's

10   shortcomings.  *Id*.  Van Zee also provided McCauley with a "Written Warning for Unsatisfactory

11   Job Performance" and a Performance Development Plan.  Curry Decl. Exh. G.

12        During a large salary review project during this review period, the analysts created a

13   master template for the hospital with complex salary formulas for each department built into the

14   template.  Van Zee Decl. ¶ 4.  When the compensation team was preparing to upload the salary

15   increase data for the hospital's non-exempt employees, it was discovered that McCauley's

16   portion of the data had duplicate information.  *Id*.; McCauley Depo. 127:6-13.  The

17   compensation team had to fix her error.  McCauley Depo. 127:14-17.

18        McCauley asserts that when Van Zee told her that she had made an error on this focal

19   review that took hours to fix, she explained that other analysts also made errors.  McCauley

20   Depo. 74:19-24.  McCauley alleges that Van Zee responded, "well, they're human."  *Id*. 74:19-

21   25.  McCauley asserts that this comment implied that she was not human, and therefore

22   evidenced some kind of racial animosity on the part of Van Zee.

23        **McCauley Begins To Assert Discrimination, Harassment And Retaliation**

24        On December 20, 2004, McCauley's attorney sent a letter to SHC and LPCH alleging

25   "employment discrimination on the basis of race, harassment, retaliation, stress and bad faith

26   arising from the conduct of her supervisor, Rick Van Zee."

27        On January 19, 2005, McCauley emailed Treva Davis ("Davis"), the director of employee

28   & labor relations, complaining that she had been "singled out and unjustly criticized" by Van

4

1  Zee.

2       On February 8, 2005, Davis received an email from a client, Kelly DeMaria, complaining

3  about McCauley's handling of a review.  The email states in part, "I had been given erroneous

4  information from Vanda back in May when I was given these job codes and ranges. . . .  The job

5  codes Vanda gave me are inaccurate, for example Job Code 200187 is listed for 2 of my

6  positions and it is a Home Infusion Reimbursement analysis in your system???"  Davis Decl. ¶ 5

7  and Exh. B thereto.  Davis asked Van Zee to follow up with McCauley, which he did.  On

8  February 9, 2005, McCauley sent Van Zee an email confirming their conversation regarding her

9  mistake in giving Kelly DeMaria incorrect job codes.  Van Zee Decl. Exh. A.

10       On February 10, 2005, McCauley filed a charge with the California Department of Fair

11  Employment and Housing ("DFEH") alleging discrimination and harassment on the basis of race

12  and disability, and retaliation for "complaining about Mr. Van Zee's harassing/discriminating

13  behavior."

14       On March 8, 2005, McCauley filed a charge with the United States Equal Employment

15  Opportunity Commission ("EEOC") that she cross-filed with the DFEH, alleging discrimination

16  on the basis of race and disability as well as retaliation.

17       The following week, Stanford retained an outside law firm to conduct an investigation of

18  McCauley's allegations.  The investigator spent a month interviewing witnesses and reviewing

19  documents, but found insufficient evidence to support a finding that there had been any violation

20  of Stanford policy.  C. Johnson Decl. Exh. A.

21       On May 11, 2005, McCauley filed a third administrative charge of discrimination,

22  alleging discrimination on the basis of disability and retaliation.

23       **Fourth Performance Evaluation**

24       On November 11, 2005, Van Zee gave McCauley a performance evaluation rating her as

25  "Meets critical standards but needs improvement in others."  Curry Decl. Exh. H.  Van Zee noted

26  that McCauley had shown improvement in cooperation with co-workers and willingness to help

27  out, but stated that "she needs to increase her job knowledge with respect to the use of Excel,

28  Reward, compensation analysis and appropriate methodology for such."  *Id.*  McCauley's

5

1    Performance Development Plan was continued for two more months, and McCauley was warned

2    that if she was unsuccessful in the Plan, she would be placed on probation.  *Id*.  She received a

3    2% merit increase.

4         During the period covered by the review, McCauley had been tasked with surveying peer

5    hospitals to find out what they were paying.  Van Zee Decl. ¶ 10.  Before commencing the

6    survey, she asked other analysts what hospitals were peer hospitals, and asked for peer contact

7    information.  *Id*.  Van Zee found it unacceptable that McCauley did not already know this

8    information given that she had been at SHC and LPCH for three years.  *Id*.  When McCauley

9    emailed individuals at peer hospitals, her email included typographical and grammatical errors.

10   Davis Decl. Exh. C.

11        McCauley's co-workers reported problems with her technical skills, telling Van Zee that

12   she asked many repetitive questions during training.  Van  Zee Decl. ¶ 11.

13        **Van Zee Resigns In November 2005**

14        Shortly after giving McCauley her November 2005 evaluation, Van Zee resigned.  For

15   about two months, the compensation department did not have a manager.

16        In January 2006, McCauley applied for a compensation position at Stanford University's

17   School of Medicine.  McCauley was not selected for the position.

18        In February 2006, Jill Johnson ("Johnson") became the interim compensation manager.

19   She stayed in the position for only three months before returning to her home out of state.  Curry

20   Dec. ¶ 5.  McCauley resigned her employment the following month, in June 2006.  She did not

21   state that she was leaving due to conduct by Van Zee (who had resigned seven months

22   previously), or because she felt mistreated during her employment.  Curry Decl. ¶ 6, McCauley

23   Depo. 201:11-19.  McCauley immediately began working as a compensation analyst at an

24   organization called NUMMI.

25        **McCauley Files This Action**

26        McCauley filed this action against SHC and LPCH on September 13, 2006 in the San

27   Mateo Superior Court, alleging claims for:  (1) discrimination in employment on the basis of

28   race, gender, and disability in violation of California's Fair Employment and Housing Act

6

1  ("FEHA"), Cal. Gov't Code § 12900 *et seq*., and Title VII of the Civil Rights Act of 1964 ("Title

2  VII"), 42 U.S.C. § 2000e *et seq*.; (2) hostile work environment in violation of FEHA and Title

3  VII; (3) hostile work environment in violation of FEHA and Title VII; (4) disability

4  discrimination in violation of FEHA, Title VII and the Americans with Disabilities Act of 1990,

5  42 U.S.C. § 12101 *et seq*.; (5) intentional infliction of emotional distress; (6) violation of public

6  policy; (7) violation of Article I, Section 8 of the California Constitution; and (8) violation of

7  Cal. Bus. & Prof. Code § 17200.  Following removal of the action, this Court dismissed

8  McCauley's claims based on gender and disability and struck from the complaint allegations

9  based upon events prior to May 12, 2004.  *See* Order of July 17, 2007.

10      Defendants seek summary judgment with respect to McCauley's remaining claims for

11  discrimination on the basis of race, hostile work environment, retaliation, intentional infliction of

12  emotional distress, violation of public policy, violation of the California Constitution, and

13  violation of  Cal. Bus. & Prof. Code § 17200.

### II. LEGAL STANDARD

15      A motion for summary judgment should be granted if there is no genuine issue of

16  material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

17  56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears

18  the initial burden of informing the Court of the basis for the motion and identifying the portions

19  of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that

20  demonstrate the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

21  317, 323 (1986).

22      If the moving party meets this initial burden, the burden shifts to the non-moving party to

23  present specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

24  *Celotex*, 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

25  evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

26  party, could resolve the material issue in his or her favor.  *Anderson*, 477 U.S. 242, 248-49;

27  *Barlow v. Ground*, 943 F. 2d 1132, 1134-36 (9th Cir. 1991).

28

7

1

# III. DISCUSSION

2

**A.     Evidentiary Objections**

3     McCauley objects to virtually all of the evidence submitted by Defendants in support of

4 their motion.  Defendants object to portions of McCauley's declaration and to the declaration of

5 Mary Rufus.  The objections to evidence actually relied upon by the Court are addressed as

6 follows:

7

**Performance Evaluations Attached To Curry Decl. As Exhs. D-H**

8     McCauley objects to all of her performance evaluations on the basis of hearsay, lack of

9 foundation and lack of personal knowledge.  The evaluations fall within the business records

10 exception to the hearsay rule.  *See* Fed. R. Civ. P. 803(6).  They are authenticated by Lori Curry,

11 the vice president of human resources for SHC, who states that in her position she has access to

12 McCauley's personnel records, and who represents under penalty of perjury that the evaluations

13 attached to her declaration are true copies.  Curry Decl. ¶ 7.  McCauley's objections to the

14 performance evaluations are overruled.

15

**Declaration Of Rick Van Zee**

16     McCauley objects to numerous portions of Van Zee's declaration on various grounds,

17 including hearsay, lack of foundation, and that the statements are inconsistent with the evidence.

18 These objections are overruled.

19

**Declaration Of Treva Davis**

20     McCauley objects to portions of Davis' declaration on the bases of hearsay, lack of

21 personal knowledge, lack of foundation, and that the statements are inconsistent with the

22 evidence.  These objections are overruled.

23

**Declaration Of Cindy Johnson**

24     McCauley objects to the report of the independent investigator that Defendants hired to

25 look into McCauley's complaints, attached as Exhibit A to the declaration of Cindy Johnson, the

26 former vice president of human resources for SHC.  The document is properly authenticated.

27 McCauley's objection is overruled.

28

**Declaration Of Nancy Winningham**

8

1   McCauley objections to Winningham's declaration statements.  Ms. Winningham has

2   personal knowledge of the statements in her declaration relied upon by the Court.  The objection

3   is overruled.

4           **Declaration Of Duperrault**

5           McCauley objects to the substance of Duperrault's declaration statements, asserting that

6   the statements are contradicted by other evidence in the record.  This is not an appropriate basis

7   for an evidentiary objection.  The objection is overruled.

8           **Declarations Of Chia-Yu Chan, Alex Tylor-Boarman, And Shara Johnson**

9           McCauley objects to the declarations of her three co-workers on the bases of hearsay, lack

10  of foundation, lack of personal knowledge, and that their statements are contradicted by other

11  evidence in the record.  To the extent that the declarations report statements made by McCauley,

12  they are admissible as party admissions.  *See* Fed. R. Evid. 801(d)(2).  With respect to the

13  remainder of the declarations, the declarants have personal knowledge, as they are reporting

14  events that they themselves witnessed.  McCauley's argument that the statements are "false" and

15  contradicted by other evidence in the record is not an appropriate basis for an evidentiary

16  objection.  The objection is overruled.

17          **Declaration Of Alyson Cabrera**

18          McCauley objects to certain exhibits to the Cabrera Declaration that are not relied upon

19  by the Court.  The Court notes, however, that Cabrera identifies herself as an attorney with the

20  firm representing Defendants, and that all of the exhibits are either filings in this case, documents

21  produced by McCauley in discovery, transcripts of depositions, and the like, all of which are

22  properly authenticated by Cabrera.

23          **Declaration Of Vanda McCauley**

24          Defendants object to portions of McCauley's declaration on numerous bases, including

25  McCauley's failure to submit exhibits referenced in her declaration, lack of personal knowledge,

26  improper lay opinion, lack of relevance, and hearsay.  The statements identified by Defendants

27  assert facts "on information and belief," give legal opinion as to whether harassment or

28  discrimination occurred, refer to exhibits that are not attached to the declaration, speculate as to

9

1    the state of mind of other persons, or are irrelevant to the questions before the Court.

2    Accordingly,  Defendants' objections are sustained.

3                    **Declaration Of Mary Rufus**

4          Defendants object to the Rufus declaration on the bases that it is unsigned, that McCauley

5    failed to disclose Rufus as a witness in her initial disclosures, and that the alleged events set forth

6    in the declaration pre-date May 12, 2004 and thus are time-barred.  Defendants also object to

7    certain portions of the declaration on the bases of improper lay opinion, lack of personal

8    knowledge, lack of relevance, and hearsay.  The Court sustains the objection to the entire

9    declaration on the ground that all of the events described therein occurred prior to May 12, 2004

10   and thus cannot form the basis for any of the remaining claims in this case.  The Court also

11   sustains Defendants' objections under the Federal Rules of Evidence.

12   **B.    Race Discrimination**

13         McCauley asserts race discrimination claims under both Title VII and FEHA.  The

14   appropriate legal framework for evaluating her claims is that set forth in *McDonnell Douglas*

15   *Corp. v. Green*, 411 U.S. 792, 802 (1981).  *See Cornwell v. Electra Central Credit Union*, 439

16   F.3d 1018, 10128 (9th Cir. 2006) (Title VII); *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 355

17   (2000) (FEHA).  Under *McDonnell Douglas*, an employee alleging disparate treatment on the

18   basis of race has the initial burden of establishing a *prima facie* case, meaning the employee

19   "must offer proof:  (1) that the plaintiff belongs to a class of persons protected by [statute]; (2)

20   that the plaintiff performed his or her job satisfactorily; (3) that the plaintiff suffered an adverse

21   employment action; and (4) that the plaintiff's employer treated the plaintiff differently than a

22   similarly situated employee who does not belong to the same protected class as the plaintiff.

23   *Cornwell*, 439 F.3d at 1028 (citing *McDonnell Douglas,* 411 U.S. at 802).

24         "Establishing a *prima facie* case under *McDonnell Douglas* creates a presumption that the

25   plaintiff's employer undertook the challenged employment action because of the plaintiff's race."

26   *Id*.  To rebut the presumption, the defendant employer must produce admissible evidence

27   demonstrating that the employer took the challenged action "for a legitimate, nondiscriminatory

28   reason."  *Id*. (internal quotation marks and citation omitted).  "If the defendant does so, then the

10

presumption of discrimination drops out of the picture and the plaintiff may defeat summary

judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P.

56(c)."  *Id*. (internal quotation marks and citations omitted).  "In the context of employment

discrimination law under Title VII, summary judgment is not appropriate if, based on the

evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that

the defendant undertook the challenged employment action because of the plaintiff's race."  *Id*.

### 1.    *Prima Facie* Case

Although a plaintiff need present only minimal evidence in order to establish a *prima*

*facie* case, the Court concludes that McCauley has failed to do so here.  McCauley clearly is in a

protected class, as she is African-American (element 1).

However, she has not offered proof that she was performing her job in a satisfactory

manner (element 2).  McCauley's claims are limited to those based upon conduct occurring on or

after May 12, 2004.  *See* Order of July 17, 2007.  As discussed above, all of her relevant

performance evaluations indicated that McCauley's Excel skills were deficient.  On April 19,

2004[3], she was rated as "Needs improvement" because of, *inter alia*, her inability to create

spreadsheets with correct formulas.  Curry Decl. Exh. E.  On October 28, 2004, she was rated

"Fails to meet standards" because, *inter alia*, her "quality of work, especially in the area of

working with spreadsheets and statistical data is unacceptable."  Curry Decl. Exh. F.  On

November 11, 2005, she was rated "Meets critical standards but needs improvement in others,"

at which time she was told that "she needs to increase her job knowledge with respect to the use

of Excel, Reward, compensation analysis and appropriate methodology for such," and was

warned that if she was unsuccessful in her Performance Development Plan, she would be placed

on probation.  Curry Decl. Exh. H.  The record is replete with evidence documenting specific

instances when McCauley's lack of proficiency with Excel and other aspects of her job caused

others in her department to have to work long hours to correct her mistakes.  *See, e.g.*, Van Zee

---

[3] Although the April 19, 2004 evaluation is not actionable, as it is outside the temporal limitation imposed by the Court in its Order of July 17, 2007, the evaluation was conducted shortly before the critical date of May 12, 2004 and thus is relevant to the question of whether McCauley's job performance was satisfactory on that date and thereafter.

Case No. C 07-1784 JF (RS)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

1   Decl. ¶¶ 3-4, McCauley Depo. 127:14-17.  Defendants received client complaints about

2   McCauley.  *See, e.g.*, Davis Decl. ¶ 5.  The three other compensation analysts in McCauley's

3   department have submitted declarations describing McCauley's professional shortcomings, and

4   specifically her lack of knowledge about Excel.  *See* S. Johnson Decl. ¶¶ 4-5; Chan Decl. ¶¶ 3-5;

5   Tylor-Boarman Decl. ¶¶ 3-7.

6        In contrast, the only evidence that McCauley in fact was performing her job satisfactorily

7   is her subjective opinion as reflected in her declaration submitted in opposition to the motion for

8   summary judgment.  For example, she states that "I was blamed for the mistakes of others

9   including those who were monitoring my work such as Chia-yu [sic], Tylor Boarman, and

10  Johnson."  McCauley Decl. ¶ 18.  She further states that "Van Zee made allowances for Alex

11  [Tylor-Boarman] and Shara [Johnson] and others [sic] errors, he would discount incorrect

12  information and calculations they made as minor glitches."  *Id*. ¶ 21.  She disputes that the

13  DeMaria complaint was a result of any error of hers.  *Id*. ¶ 27.  In essence, her declaration is a

14  twenty-page document in which she claims that she was competent and that Van Zee, her three

15  co-workers, and others within the hospital organization have conspired to make her appear

16  incompetent.  While McCauley's subjective belief may be genuine, it is not sufficient evidence of

17  satisfactory job performance to meet her initial burden of establishing a *prima facie* case.

18       Although McCauley was not demoted, transferred or terminated,[4] the Ninth Circuit has

19  held that in certain circumstances unfavorable performance evaluations can constitute adverse

20  employment action, *see Yartzoff v. Thomas*, 809 F. 2d 1371, 1376 (9th Cir. 1987), and there is no

21  question here that McCauley received unfavorable evaluations (element 3).[5]

22

23       [4] It is unclear from McCauley's papers whether she is claiming constructive discharge as
24  a result of Van Zee's alleged discriminatory treatment of her.  However, as is discussed in part C
    below, the Court concludes as a matter of law that McCauley cannot maintain a claim of
25  constructive discharge, both because there is no evidence of sufficiently severe or pervasive
    conduct, and because Van Zee resigned his employment seven months before McCauley
26  resigned.

27       [5] Defendants argue that there was no adverse employment action, citing a California
28  appellate case for the proposition that "a mere oral or written criticism of an employee or a
    transfer into a comparable position does not meet the definition of an adverse employment action

12

1    Although it is unclear from her papers, it appears that McCauley may be claiming that

2    Defendants not only gave her negative performance evaluations but also gave her a negative job

3    reference.  Dissemination of a negative employment reference can constitute an adverse

4    employment action if motivated by discriminatory intent.  *Hashimoto v. Dalton*, 118 F.3d 671,

5    674 (9th Cir. 1997).  However, McCauley has failed to offer proof that Defendants gave her a

6    negative employment reference.  McCauley infers that a negative reference must have been

7    given, because she applied for a position as a faculty compensation specialist at the Stanford

8    University School of Medicine, Department of Anesthesia and Cardiothoracic Surgery and,

9    although she received positive indicators that she would be hired, ultimately was not selected.

10   McCauley Decl. ¶ 53.  However, the decision maker, Nancy Duperrault ("Duperrault"), testified

11   that what actually happened was that when Duperrault asked Nancy Koski ("Koski"), a human

12   resources officer at the School of Medicine, about an appropriate salary for McCauley, Koski

13   said that McCauley was difficult to work with in her personal experience, and suggested that

14   Duperrault check additional references.  Duperrault Depo. 37:1-19, 44:19-25.  McCauley had

15   given Duperrault the name of Rogel Reyes ("Reyes"), the assistant director of patient admitting

16   at SHC, but although Reyes said positive things about McCauley, he did not work in the same

17   department as she, and Duperrault felt he was an odd choice for a reference.  Duperrault Decl. ¶

18   3.  Duperrault spoke to Winningham, who had supervised McCauley years prior, and

19   Winningham stated that because she had not worked with McCauley for a number of years,

20   Duperrault should speak with someone who had worked with McCauley more recently.

21   Duperrault Depo. 40:1-25.  At that time, McCauley had an interim supervisor at SHC and LPCH,

22   Jill Johnson, who had been there for only two months.  *Id*. ¶ 4.  Under the circumstances,

23   ────────────────────

24   under FEHA."  *See Akers v. County of San Diego*, 95 Cal. App. 4th 1441, 1457 (2002).
     However, that case also holds that "[a]n unfavorable employee evaluation may be actionable

25   where the employee proves the employer subsequently uses the evaluation as a basis to
     detrimentally alter the terms or conditions of the recipient's employment."  *Id*.  McCauley's later

26   performance evaluations resulted in her being placed on a Performance Development Plan, and
     in a warning that if she was unsuccessful in the Plan, she would be placed on probation.  *See*

27   Curry Decl. Exhs. G, H.  The Court thus concludes that for purposes of making out a *prima facie*

28   case, McCauley has demonstrated that the negative performance evaluations constituted an
     adverse employment action under FEHA as well as under Title VII.

13

1    Duperrault did not feel comfortable moving forward with McCauley's hire. *Id.* ¶ 5. Duperrault

2    did not speak with Van Zee or review McCauley's personnel file or performance evaluations. *Id.*

3    ¶ 6. Accordingly, the Court concludes that McCauley has not offered proof that Defendants

4    disseminated a negative performance evaluation.

5         Finally, McCauley has not offered proof that Defendants treated her differently from a

6    similarly situated employee who does not belong to the same protected class (element 4). She

7    asserts that Chia-Yu Chan was promoted to the position of Principal Compensation Specialist, a

8    position that was not advertised or opened such that McCauley could have applied for it.

9    McCauley Decl. ¶ 8. However, the record reflects that Chan had four years' seniority over

10   McCauley in the compensation department, having started there as a compensation analyst in

11   1997, while McCauley did not start there until 2001. Chan Decl. ¶ 1. Accordingly, Chan was

12   not similarly situated to McCauley with respect to eligibility for promotion. McCauley also

13   asserts that Chan was given additional preferential treatment when Chan was fast-tracked for

14   obtaining certification as a Certified Compensation Professional. McCauley Decl. ¶ 7. However,

15   as just noted, Chan and McCauley were not similarly situated. Moreover, another African-

16   American woman in the compensation department, Shara Johnson, was offered the same training

17   as Chan. McCauley Depo. 198:3-10; S. Johnson Decl. ¶ 6.[6]

18        Because McCauley has failed to establish a *prima facie* case, the Court concludes that

19   Defendants are entitled to summary judgment with respect to her race discrimination claims.

20   **2.    Legitimate, Nondiscriminatory Reason And Evidence Of Pretext**

21        The Court would reach the same conclusion even if McCauley had established a *prima*

22   *facie* case. Defendants have presented significant evidence, discussed at length above, that

23   McCauley received negative performance evaluations for a legitimate, nondiscriminatory reason,

24

25        [6] Johnson is of mixed race; her father is African-American and her mother is Caucasian.
     Johnson Decl. ¶ 6. McCauley asserts that "Johnson is not African American." McCauley Decl. ¶
26   16. McCauley reasons that, although Johnson claims to be of "mixed race," she does not have
     African-American facial features. *Id.* McCauley does not cite any authority for the proposition
27   that her subjective characterization of Johnson's facial features is sufficient to call into doubt
     whether Johnson legally is in the same protected class as McCauley. McCauley also does not
28   offer proof that Van Zee viewed Johnson as other than African-American.

1   i.e., because she had not mastered the skills necessary to do her job competently.  McCauley thus

2   would have the burden of presenting evidence from which "a reasonable jury could conclude by a

3   preponderance of the evidence that [Defendants] undertook the challenged employment action

4   because of [her] race."  *Cornwell*, 439 F.3d at 1028.  There simply is no admissible evidence in

5   the record from which a reasonable jury could conclude that Van Zee gave McCauley negative

6   evaluations because of her race rather than because of her performance.

7          McCauley presents her own declaration statements that she observed a pattern and

8   practice of racial discrimination in the workplace.  For the most part, those statements are

9   inadmissible as discussed in part A, above.  To the extent that any of McCauley's statements on

10  this topic are admissible, they do not demonstrate that the person who gave her negative

11  performance reviews, Van Zee, had any animus against African-Americans.  McCauley describes

12  an interaction with Van Zee in which she challenged his statement that her mistakes on a

13  particular project had taken hours to fix.  McCauley Decl. ¶ 23.  McCauley claims that she told

14  him that others had made mistakes as well, and that it was the combined errors of all that had

15  taken hours to fix.  *Id*.  McCauley asserts that Van Zee said that the errors of the other employees

16  were "human."  *Id*.  McCauley took that to mean that *she* was not human, and apparently read

17  into the comment some sort of racial animus.  However, the Court concludes as a matter of law

18  that no reasonable jury could conclude from this evidence that Van Zee was implying that

19  McCauley was not human because she was African-American.

20         In sum, McCauley has failed to establish a *prima facie* case of race discrimination and,

21  even if she had established such a case, has failed to present admissible evidence from which a

22  reasonable jury could conclude that any adverse employment actions were motivated by her race.

23  Accordingly, Defendants are entitled to summary judgment with respect to McCauley's claims of

24  race discrimination.

25  **C.      Hostile Work Environment Based On Race**

26         To make out a claim of hostile work environment based upon race under Title VII,

27  McCauley must present evidence that:  "(1) the defendants subjected her to verbal or physical

28  conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

15

1   severe or pervasive to alter the conditions of her employment and create an abusive working

2   environment." *Surrell v. California Water Service Co.*, 518 F. 3d 1097, 1108 (9th Cir. 2008).

3   The showing required under FEHA is essentially the same. *Aguilar v. Avise Rent A Car System,*

4   *Inc.*, 21 Cal. 4th 121, 130-31 (1999). McCauley must demonstrate not only that she subjectively

5   found the workplace hostile to African-Americans, but that the workplace objectively was

6   hostile, meaning that a reasonable woman would consider the environment abusive. *Davis v.*

7   *Team Electric Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008). When examining the record on this

8   point, a court must "consider all the circumstances, including the frequency of the discriminatory

9   conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

10  utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

11  (internal quotation marks and citation omitted). "[T]he required level of severity or seriousness

12  varies inversely with the pervasiveness or frequency of the conduct." *Id.* (internal quotation

13  marks and citation omitted).

14          In the present case, McCauley asserts that she was subjected to a hostile work

15  environment. However, she identifies no verbal or physical conduct from which a reasonable

16  jury could draw this conclusion. As discussed above, Van Zee's comment that McCauley's co-

17  workers were "human" cannot reasonably be construed to mean that McCauley is not human

18  because she is African-American. This is particularly true given that one of the very co-workers

19  allegedly deemed "human" by Van Zee is Shara Johnson, who is African-American. McCauley's

20  allusions to a widespread pattern and practice of discrimination against African-Americans, set

21  forth in her declaration statement, are inadmissible as discussed in part III. A., above. While

22  McCauley genuinely may believe that racial animus was behind the negative performance

23  evaluations given by Van Zee, the complaints about her from all three of her co-workers in the

24  compensation department, the complaints about her from clients, and the "difficult" label given

25  her by Koski, McCauley's subjective belief is insufficient to support a claim for hostile work

26  environment. There simply is no admissible evidence in the record from which a reasonable jury

27  could conclude that McCauley was subjected to severe and pervasive conduct on the basis of her

28  race that was sufficient to alter her working conditions. McCauley relies primarily upon her own

16

1   declaration, but as discussed in part III. A., above, much of that declaration is inadmissible.

2   Moreover, courts generally will not find the existence of a triable issue of material fact based

3   only upon the uncorroborated and self-serving statements of the plaintiff.  *See Villiarimo v.*

4   *Aloha Island Air, Inc.*, 281 F. 3d 1054, 1061 (9th Cir. 2002).

5        To the extent that McCauley claims that she was constructively discharged, the Court

6   notes that Van Zee, who allegedly orchestrated the harassment, ostracism and other wrongful

7   conduct that created the allegedly hostile work environment, resigned *seven months* before

8   McCauley voluntarily quit her job.  Under these circumstances, McCauley could not sustain a

9   claim of constructive discharge even if she had established some type of actionable harassment

10  by Van Zee.

11       Accordingly, Defendants are entitled to summary judgment with respect to McCauley's

12  claims of hostile work environment based upon race.

13  **D.    Retaliation**

14       McCauley's retaliation claims are subject to the same burden-shifting framework as are

15  her claims of race discrimination.  *See Davis*, 520 F. 3d at 109394 (Title VII); *Yanowitz v.*

16  *L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (FEHA).  "The elements of a *prima facie*

17  retaliation claim are, (1) the employee engaged in a protected activity, (2) she suffered an adverse

18  employment action, and (3) there was a causal link between the protected activity and the adverse

19  employment action."  *Davis*, 520 F. 3d at 1093-94.

20       McCauley appears to assert that she engaged in three types of protected activity.  First,

21  she asserts that in April 2004, she made informal, verbal complaints to Van Zee and to Jeff

22  Driver, the chief risk officer, that she believed that an African-American employee named

23  Raymond Parks was being set up for constructive termination based upon his race.  McCauley

24  Decl. 17.  Making an informal complaint to a supervisor constitutes protected activity.  *Ray v.*

25  *Henderson*, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000).  Second, on December 20, 2004,

26  McCauley's attorney sent a letter to SHC and LPCH alleging "employment discrimination on the

27  basis of race, harassment, retaliation, stress and bad faith arising from the conduct of her

28  supervisor, Rick Van Zee."  Finally, McCauley filed formal charges of discrimination and

17

1  retaliation with the EEOC and/or DFEH on February 10, 2005, March 8, 2005, and May 11,

2  2005.  All of these actions constitute protected activity (element 1).

3  As discussed above, McCauley has demonstrated that she was subjected to an adverse

4  employment action in the form of negative performance evaluations (element 2).  Those

5  evaluations occurring after May 12, 2004 (the Court having struck from the complaint allegations

6  based upon events prior to May 12, 2004) include the evaluations dated October 28, 2004 and

7  November 11, 2005.  However, McCauley has not offered any admissible evidence of a causal

8  link between her protected conduct and the two evaluations.  She speculates that the October 28,

9  2004 evaluation was in retaliation for her April 2004 informal complaints regarding Raymond

10 Parks.  "[I]n some cases, causation can be inferred from timing alone where an adverse

11 employment action follows on the heels of protected activity.  *Villiarimo*, 281 F. 3d at 1065.  In

12 this case, however, there is a six month gap between McCauley's complaints about Parks and the

13 October 28, 2004 evaluation.  While that might be close enough temporal proximity to raise an

14 inference of retaliation if there were some other corroborating evidence, the Court concludes as a

15 matter of law that it is insufficient to raise such an inference in this case.  The record not only is

16 devoid of any other evidence indicating that the subject performance evaluations were retaliatory,

17 it actually contains evidence raising the opposite inference.  Although all of Van Zee's

18 evaluations of McCauley were negative to some degree, his last evaluation, which followed

19 McCauley's letter from counsel and her formal agency charges, actually was *more positive* than

20 the evaluation that preceded these protected actions.

21 Even if McCauley had established a *prima facie* case of retaliation, Defendants have

22 offered ample evidence that Van Zee had a legitimate, nondiscriminatory reason for giving

23 McCauley negative performance evaluations, and McCauley has failed to present evidence

24 sufficient to create a triable issue as to this material fact.  She relies upon her own subjective

25 opinion that Van Zee's conduct was retaliatory, but as discussed above in III. C., such opinion is

26 insufficient to defeat summary judgment.

27 **E.      Remaining State Law Claims**

28 "An essential element of a cause of action for intentional infliction of emotional distress

18

1    is extreme and outrageous conduct by the defendant." *Yurick v. Superior Court*, 209 Cal. App.

2    3d 1116, 1123 (1989).  McCauley's allegations of such conduct are grounded in her claims of

3    discrimination, hostile work environment, and retaliation.  Because McCauley has failed to raise

4    a triable issue of material fact as to the existence of any discriminatory, harassing or retaliatory

5    conduct, McCauley's emotional distress claim also is subject to summary adjudication.

6        McCauley's failure to make out a case of discrimination, hostile work environment, or

7    retaliation disposes of her claims for violation of public policy and violation of Article I, Section

8    8 of the California Constitution.  *See DeHorney v. Bank of America Nat. Trust and Sav. Ass'n*,

9    879 F. 2d 459, 465 (9th Cir. 1989) (holding that plaintiff's failure to make out a case of race

10   discrimination also disposed of plaintiff's claim for discharge in violation of public policy).  Her

11   claim of violation of Cal. Bus. & Prof. Code § 17200 likewise fails, because there is no predicate

12   violation of statute upon which to base the action.  *See In re Vaccine Cases*, 134 Cal. App. 4th

13   438, 459 (2005).

14                           **IV. REQUEST FOR CONTINUANCE**

15       McCauley seeks a continuance so that she may take discovery that she believes would

16   allow her to oppose Defendants' motion more effectively.  Pursuant to Fed. R. Civ. P. 56(f), a

17   party may request that the hearing on a motion for summary judgment be continued to permit that

18   party to conduct further discovery. Fed. R. Civ. P. 56(f).  A motion for continuance under Rule

19   56(f) must be supported by affidavits setting forth the particular facts expected to be discovered

20   and how those facts would preclude summary judgment.  *Brae Transportation, Inc. v. Coopers &

21   Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986).  "The burden is on the party seeking additional

22   discovery to proffer sufficient facts to show that the evidence sought exists, and that it would

23   prevent summary judgment." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir.

24   1996).  The movant additionally must show that he or she has been diligent in conducting

25   discovery.  *Nidds*, 113 F.3d at  921; *Brae*, 790 F.2d at 1443.  Failure to comply with the

26   requirements of Rule 56(f) is a proper ground for denying the motion for continuance and

27   proceeding with the motion for summary judgment.  *State of California v. Campbell*, 138 F.3d

28   772, 779 (9th Cir. 1998); *Brae*, 790 F.2d at 1443.

1    McCauley seeks to take the depositions of the following thirteen individuals:  her three

2    former supervisors, Nancy Winningham, Rick Van Zee, and Jill Johnson; her three former co-

3    workers in the compensation department, Chia-Yu Chan, Shara Johnson, and Alex Tylor-

4    Boarman; Treva Davis; Jeff Driver; Nancy Koski; Raymond Parks; Cindy Johnson; Marguerite

5    Amato; and Kelly DeMaria.  These are *all* the major players in this case.  It does not appear that

6    McCauley took *any* depositions in the year and a half that elapsed between her filing of the action

7    in September 2006 and Defendants' filing of their motion for summary judgment in April 2008.

8    Moreover, McCauley waited until April 16, 2008, two days before her opposition to Defendants'

9    motion was due, to seek a continuance.  McCauley offers no credible explanation for these

10   omissions.  The Ninth Circuit has found a lack of diligence when a party failed to depose a

11   witness during the twenty-seven months between the start of the litigation and the discovery

12   cutoff; when a party failed to conduct discovery despite a one month continuance; and when a

13   party had ample opportunity to conduct discovery, but failed to do so.  *Cornwell*, 439 F. 3d at

14   1026 (affirming denial of motion to reopen discovery).

15   Given McCauley's complete lack of diligence, the Court would not be inclined to grant

16   her request for continuance under any circumstances.  The Court *might* be persuaded to grant a

17   continuance despite McCauley's lack of diligence if Defendants' motion presented a close call –

18   for example, if it appeared that McCauley might be able to defeat summary judgment if she had

19   one or two pieces of additional, identifiable information.  However, as is discussed at length

20   above, this is not a close case.  McCauley has not made a *prima facie* showing of discrimination

21   or retaliation, nor has she made even an arguable showing of hostile work environment.  It is not

22   clear exactly what information McCauley hopes to obtain from each of the thirteen witnesses she

23   now proposes to depose.  As best the Court can discern, McCauley hopes to go on a fishing

24   expedition in search of some admissible evidence to support her claims.

25   The request for continuance will be denied.

26

27

28

20

Case No. C 07-1784 JF (RS)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

1

**V. ORDER**

2     (1)      Defendants' motion for summary judgment is GRANTED;

3     (2)      Plaintiff's request for a continuance is DENIED;

4     (3)      The Clerk of the Court shall enter judgment and close the file.

5

6

7

8

9

10 DATED:  3/11/09

11 _____

JEREMY FOGEL
12 United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-1784 JF (RS)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)

1   Copies of Order served on:

2

3   Marylon M. Boyd     marylonboyd@msn.com, tmeyers@tanyameyerslaw.com

4   Alyson Cabrera    acabrera@gordonrees.com

5   Michael Terence Lucey     mlucey@gordonrees.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 07-1784 JF (RS)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ETC.
(JFLC2)